# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER E. WRIGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>WINNEBAGO INDUSTRIES, INC.,<br><br>    Defendant. | No. C06-3085-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Federal and Iowa law claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   *C. Prima Facie Case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

On December 11, 2006, Christopher E. Wright filed a complaint in this court against his former employer, defendant Winnebago Industries, Inc. ("Winnebago"), alleging two causes of action: (1) a claim of race discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.*; and (2) a pendent state law claim under the Iowa Civil Rights Act ("ICRA") for race discrimination, IOWA CODE CH. 216.

Defendant Winnebago has filed a Motion for Summary Judgment on both of Wright's claims. In its motion, defendant Winnebago asserts that Wright cannot establish a *prima facie* case of race discrimination because he was not meeting Winnebago's legitimate job expectations when he violated Winnebago policy, prohibiting possession of any controlled substance on Winnebago's property, by having a marijuana pipe with marijuana seeds, stems and residue in his automobile parked on Winnebago property. Defendant Winnebago also asserts that Wright cannot establish a *prima facie* case of race discrimination because he cannot show that similarly situated employees outside the protected class were treated differently. Defendant Winnebago further argues that even if Wright can establish a *prima facie* case of race discrimination, Winnebago can demonstrate a legitimate, nondiscriminatory reason for Wright's termination, namely that he violated Winnebago's policy prohibiting possession of any controlled substance on Winnebago property. Finally, Winnebago argues that Wright cannot establish that its stated reason for terminating Wright—his violation of Winnebago's drug policy—was a pretext for discrimination. Wright has filed a timely resistance to defendant Winnebago's Motion for Summary Judgment, arguing that there are genuine issues of material fact in dispute regarding both of his claims.

## B. *Factual Background*

The summary judgment record reveals that the following facts are undisputed. Christopher Wright is an African-American male who was employed by Winnebago in Forest City, Iowa, from August 1999 to March 30, 2006. Winnebago is an Iowa corporation that manufactures recreational vehicles at its plant in Forest City, Iowa. Wright submitted an employment application in which he signed an acknowledgment that as a condition of employment he agreed to the following: "TO SUBMIT TO BEING SEARCHED BY WINNEBAGO SECURITY PERSONNEL WHEN ENTERING AND LEAVING THE PREMISES OWNED BY WINNEBAGO IF REQUESTED." Defendant's App. at 36, Employment Application at 2. Wright received a Winnebago employee handbook in which Winnebago's prohibition on possessing, using, or selling any controlled substances on Winnebago property was explained. Wright was aware of Winnebago's policy with respect to the possession, use, or sale of controlled substances on Winnebago property. Winnebago's policy regarding searches does not specifically refer to the search of an employee's vehicle.

Barry Bendickson, a Caucasian male, is head of security at Winnebago. Bendickson was raised in Northwood, Iowa, a community of 2200 people. While he was growing up in Northwood, there were no African Americans living in Northwood, no African-Americans attended his high school, and Bendickson did not have any African American friends while he was growing up. The first time that Bendickson met an African American was while he was serving in the armed forces, and none were his friends. Bendickson does not socialize with African Americans on a regular basis. Bendickson attended North Iowa Area Community College. He began his career with Winnebago as a canine dog handler and later became the day-shift lieutenant. Bendickson received training in the use of firearms, surveillance and arrest procedures. He also received training in how to search

3

an individual, what to look for, and where a person might hide contraband. In response to a question about how he would document suspicion of the use of drugs or alcohol, Bendickson stated that he "would probably just make a note of it." Plaintiff's App. at 9, Bendickson Dep. at 36. Bendickson also indicated that if an employee were to report the use of drugs or alcohol by another Winnebago employee, Bendickson would not get a statement from the employee because employees do not want to get involved.[1] As security manager, Bendickson has authority to terminate employees.

Bendickson received a report that four employees, including Wright, had been leaving the plant over the lunch hour and returning to work smelling of marijuana or acting impaired.[2] Bendickson watched these four employees on four or five occasions and also stood in a passageway that employees passed through on their return from lunch. On two occasions he noted the smell of marijuana when these employees passed him. Bendickson did not keep any records of his surveillance nor retain the videotape made by surveillance cameras.

On March 30, 2006, Bendickson and three other supervisors connected with the security department confronted Wright and the three other Winnebago employees, Patrick Rand, Donald Dalton, and Damon Jacobsen, as they approached Wright's car during the

---

[1] Statements were taken from employees who reported the use of alcohol by another employee.

[2] Bendickson testified in an employment compensation hearing that another employee had reported the use of a controlled substance by a group of employees, including Wright. In his deposition in this matter, Bendickson indicated that a weld shop supervisor called the security department claiming that certain employees came back from lunch impaired. Bendickson could not recall who the weld shop supervisor was, or which security officer in his department had provided the information to him. There are no records documenting the alleged report by the weld shop supervisor. Bendickson has no basis for verifying the report of impairment or that the smell of marijuana was accurate.

4

lunch hour. The four employees were searched by the four supervisors connected with the security department. The security department employees were not given any instructions on how to conduct these specific searches, but Bendickson has instructed the security employees to check pockets, hats, socks and shoes when conducting searches. The search of Jacobsen revealed a small container of marijuana on his person. When Jacobsen was asked whether he was carrying marijuana for the group, Jacobsen replied: "Something like that." Defendant's App. at 45, Security Investigation Report at 1. Jacobsen, a Caucasian employee, was terminated as a result of his possessing marijuana on Winnebago property.

Wright was searched by Winnebago Security Officer Steve Lillquist. Wright was required to remove his shoes, socks, empty his pockets, show his wallet, and unbuckle his belt and pants. Lillquist looked through Wright's wallet. Lillquist also required Wright to pull his underwear out so he could see down into Wright's underwear.[3] Wright did not see how Rand, Dalton, and Jacobsen were searched. Jacobsen testified that he was searched by taking off his coat, removing his shoes and possibly his socks, and being patted down. Jacobsen testified that the security guard conducting his search did not have to search very long to find the marijuana because Jacobsen told the security guard that he had it. Eric Amundson, the security guard who searched Jacobsen, testified that Jacobsen was required to remove his socks. Jacobsen was not required to loosen his belt. Bendickson searched Rand. Rand testified that he was searched by emptying his pockets, taking his wallet out of his pocket so that the wallet could be searched, and being patted

---

[3] Defendant Winnebago admits this fact only for the purposes of this motion for summary judgment. Security Officer Steven Lillquist testified in his deposition that he did not require plaintiff Wright to remove his belt or pull his underwear out in such a way that would permit Lillquist to look down into his underwear. Defendant's Supplemental App. at 47, Lillquist Dep. at 28. Lillquist further testified that he had never employed such a procedure with anyone. Defendant's Supplemental App. at 47, Lillquist Dep. at 28.

5

down.  Rand was not required to unbuckle his belt.  Dalton testified that he was searched by taking off his coat, removing his shoes and socks, and being patted down.  No marijuana was found on Dalton, an African American male, and Rand, a Caucasian male, so they were allowed to return to work or continue their lunch break.

At that point, even though the physical search of Wright had not resulted in the finding of any drugs in Wright's possession, Bendickson also insisted on searching Wright's car.  Bendickson had several reasons to search Wright's car: first, because the four Winnebago employees in question were stopped just before they had entered Wright's car; second, after finding marijuana on Jacobsen's person but no pipe or rolling papers with which to smoke the marijuana, Bendickson sought to search Wright's car to search for such items; and, third, because Bendickson claimed to have received a report that Wright was a drug dealer.  Wrights's car was  searched by Winnebago security personnel and the Forest City Police Department canine unit.  During this search, a marijuana pipe with marijuana seeds and stems was found in Wright's car.  The motor vehicles of the other three Winnebago employees stopped with Wright were not searched.  When Wright asked Bendickson why he was not searching their vehicles too, Bendickson simply laughed and made no other response.

Wright and his brother were in the business of selling used cars.  Wright and his brother had attempted to sell the automobile he drove to Winnebago on March  30, 2006, in Minneapolis shortly before that date.  When Wright's brother was unable to sell the car, he brought it back to Iowa.  Wright's niece had used the automobile shortly before it was returned to Iowa.  Wright's niece and a friend left the marijuana pipe in the car when they used the car.  At the time the officers found the marijuana pipe in his car, Wright denied that it was his or that he had known it was in the car.  Wright told the officers that he had recently purchased the car from a 91 year-old woman.  Upon being told this, Bendickson

responded that the 91 year old woman must have been a big time drug dealer and asked Wright if he was helping her transport drugs.

After Wright had been in the Winnebago security office for 15 minutes, Bendickson came out of his office, looked at Wright with a big smile on his face and told him that he was "terminated." Bendickson also terminated Damon Jacobsen's employment that same day. When Bendickson terminated Jacobsen, he was calm and did not smile.

Wright was arrested and charged by Forest City Police Officer Andrew Klein with a municipal citation for possession of drug paraphernalia. Wright was subsequently acquitted of the charge.

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods*

*v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get*

*Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the

9

absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.");

*see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

The court recognizes "that summary judgment is disfavored in employment discrimination cases." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases . . . ."); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases."). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence . . . . ," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson*, 425 F.3d at 542 (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). Nonetheless, this exercise of judicial

prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher*, 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)). The fact remains that "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The court will apply these standards to the defendants' Motion for Summary Judgment.

However, the court must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task. Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting. Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881). Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations. Employment discrimination and retaliation, except in the rarest cases, is difficult to prove. It is perhaps more difficult to prove today—more than forty years after the passage of Title VII which is at issue here—than during Title VII's earlier evolution. Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). Indeed, the Fifth Circuit Court of Appeals recognized more than thirty-five years ago, that "[a]s patently discriminatory practices become outlawed, those employers bent on pursuing a general

policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees." *Rogers v. EEOC*, 454 F.2d 234, 239 (5th Cir. 1971) (later relied on by the Supreme Court in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986), as one of the principal authorities supporting recognition of a cause of action for hostile environment sexual harassment under Title VII). This court's experience suggests the truth of that observation. Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination are proportional to the caliber of the employee, discrimination against the best employees is the least cost effective. *See, e.g., id*. Rather, discrimination plaintiffs tend to be those average or below-average workers—equally protected by Title VII, the ADA, the ADEA, or the FMLA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id*. Consequently, with both the legal standards for summary judgment and the teachings of experience in hand, the court turns to consideration of the parties' arguments for and against summary judgment in this case.

### B. *Federal and Iowa law claims*

Before addressing the merits of the parties' respective arguments, it is important to note, again, that Wright has brought his claims of race discrimination under both federal law, pursuant to Title VII, and state law, pursuant to the ICRA. This court has previously noted that "[i]t is widely accepted in the Eighth Circuit that generally no distinction is

made between claims based on federal law and comparable state law claims under the ICRA." *Soto v. John Morrell & Co.*, 285 F. Supp.2d 1146, 1177-78 (N.D. Iowa 2003) (citing *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003); *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir.2001)). This is so, because the Iowa Supreme Court has recognized that federal precedent is applicable to discrimination claims under the ICRA. *See id.* at 1178 (citing *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999), which states, "The ICRA was modeled after Title VII of the United States Civil Rights Act. Iowa courts therefore turn to federal law for guidance in evaluating the ICRA."). However, federal law is not controlling, but merely provides an analytical framework for analyzing ICRA claims. *Id.* (citing *Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989)). With these principles in mind, unless a distinction between Title VII and the ICRA becomes critical, the court will analyze Wright's state and federal race discrimination claims together using federal precedent.

### C. Prima Facie Case

A plaintiff can prove a Title VII claim by either direct evidence or by the indirect method of proof set out under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff Wright concedes that he has not marshaled any "direct" evidence of race discrimination but is instead relying upon circumstantial evidence to establish his claim of race discrimination. In the absence of "direct" evidence, Wright's race discrimination claim is subject to the *McDonnell Douglas* burden-shifting analysis. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006). The first step in that analysis for a discriminatory discharge claim, requires the plaintiff to establish the following elements of a *prima facie* case: (1) that the plaintiff was a member of a protected class; (2) that he was meeting the employer's legitimate job expectations; (3) that he suffered an adverse

employment action; and (4) that similarly situated employees outside the protected class were treated differently. *Twymon*, 462 F.3d at 934; *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 913 (8th Cir. 2006); *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006). "If a prima facie case is established, a 'burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff.'" *Twymon*, 462 F.3d at 934-35 (quoting *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005)). If the employer makes such a showing, the burden then returns to the plaintiff to present evidence that the reasons offered by the employer are actually a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993); *McDonnell Douglas*, 411 U.S. at 804.

Defendant Winnebago concedes that plaintiff Wright can establish the first and third elements of his *prima facie* case, but contends that plaintiff Wright cannot establish a *prima facie* case of race discrimination here because he cannot make out the necessary showings that he was meeting Winnebago's legitimate job expectations or that he was treated differently than similarly situated Caucasian employees. Plaintiff Wright contests both of these assertions.

The parties dispute whether plaintiff Wright was meeting Winnebago's legitimate job expectations for his position, as required by the second element of his *prima facie* case. Defendant Winnebago asserts that Wright was not meeting its legitimate expectations because he was in violation of the company's policy against employees' possessing, using, or selling controlled substances on Winnebago's property. Plaintiff Wright counters that Winnebago's argument is "circuitous" because it is based on a discriminatory search. He further argues that there is a genuine issue of material fact with respect to whether any marijuana was actually found in his car.

Taking up Wright's assertion that he has generated a genuine issue of material fact with respect to whether there was any marijuana actually found in his car, the court concludes, after viewing the record in the light most favorable to Wright as the nonmoving party, there is no genuine issue of material fact with respect to the fact that Winnebago could reasonably believe that marijuana was found in his car. The security report generated by Winnebago Security Officer Steven Lillquist with respect to the search of the four Winnebago employees and Wright's car states that:

> WRIGHT'S VEHICLE (549RJK: WHITE 1992 CHRYSLER LEBARON) WAS SEARCHED BY WINNEBAGO Sgt STEVEN LILLQUIST AND FCPD CANINE OFFICER ANDREW KLEIN. DURING THE SEARCH, A PIPE USED FOR SMOKING MARIJUANA WAS FOUND IN THE ASHTRAY ALONG WITH MARIJUANA STEMS AND SEEDS IN THE ASHTRAY. THE PIPE BOWL WAS APPROXIMATELY HALF FULL OF WHAT APPEARED TO BE MARIJUANA.

Defendant's App. at 44, Security Investigation Report at 1. The deposition testimony of Forrest City Police Officer Andrew Klein corroborates Lillquist's report that marijuana was found in Wright's car.[4] In response, Wright has offered his bare assertions that the marijuana pipe found in his car was not his and that he had never seen the marijuana pipe

---

[4] The court notes that it has not considered the hearsay testimony contained in Officer Klein's deposition testimony concerning laboratory testing results of the substances found in Wright's car. *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001) (holding that inadmissible hearsay statements could not be used to defeat or support summary judgment motion); *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993) (same); *Walker v. Wayne County, Iowa*, 850 F.2d 433, 434-35 (8th Cir. 1988) (same); *see also Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir. 1986) ("[A] party may not rely on inadmissible hearsay in opposing a motion for summary judgment.").

before that date. When asked in his deposition whether the marijuana bowl contained any marijuana, Wright testified as follows:

> Q. What was in the marijuana bowl?
> A. They didn't show it to me, but they said it had seeds and stems in it.
> Q. Did you see it?
> A. No, ma'am.

Plaintiff's App. at 64, Wright's Dep. at 78.

As discussed above, a genuine issue of material fact is present were "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 248-49. Here, the court concludes that Wright has not generated a genuine issue of material fact with respect to whether there was any marijuana actually found in his car through his bare assertions that the marijuana pipe found in his car was not his and that he had never seen the marijuana pipe before that date because these assertions do not address the pertinent issue, whether or not marijuana was found in Wright's car while it was on Winnebago property.

The court also concludes that Wright has not generated a genuine issue of material fact that the search of his automobile was race related. The court notes that the reason Wright's car was searched was because it was the vehicle that Wright and the other three Winnebago employees were getting into to leave for lunch. Winnebago security was investigating information that it had received that Winnebago employees were using drugs during their lunch hour. This information had been corroborated to some degree by the fact that Bendickson had on two occasions smelled the odor of marijuana on these employees when they passed him as they returned from lunch. Moreover, at the time of the search, marijuana had already been found on one of the four Winnebago employees, but no rolling papers or pipe for smoking the marijuana had been found. Given these

circumstances, the decision to search only Wright's car cannot be deemed to have been race related.

Thus, for the purposes of determining Winnebago's Motion For Summary Judgment, the court concludes that Winnebago has established that Wright was in violation of the company's policy against employees' possessing, using, or selling controlled substances on Winnebago's property. An employee who violates a significant company policy, such as a prohibition on an employee not using, possessing or selling controlled substances on the employer's premises, is not meeting an employer's legitimate expectations. *See Young v. Chicago Transit Authority*, 189 F. Supp. 2d 780, 789 (N.D. Ill. 2002) (holding that plaintiff bus driver who tested positive for cocaine following on-the-job injury failed to meet his employer's legitimate performance expectations); *see also Brummett v. Lee Enters., Inc.*, 284 F.3d 742, (7th Cir. 2002) (holding that employee did not meet employer's legitimate expectation that he have good-driving record and valid driver's license where employee's license had been suspended for minimum of six months based on dangerous driving offense). Because plaintiff Wright has failed to show that he was able to meet Winnebago's legitimate job expectations, he has failed to make out even a *prima facie* case of race discrimination under Title VII.

Even if the court were to assume arguendo that Wright has met the first three elements of a *prima facie* case of race discrimination under the *McDonnell Douglas* burden-shifting analysis, Wright has failed to establish the fourth element of a prima facie case; namely, that Winnebago treated similarly-situated individuals outside Wright's protected class more favorably. Wright has presented no evidence that non-African American employees who were found to be in possession of controlled substances on Winnebago's property did not have their employment terminated. Indeed, here the summary judgment record is to the contrary. Of the four Winnebago employees stopped

18

and searched, the one African American and the one Caucasian employee who were not found to be in possession of controlled substances were both permitted to return to work while the one African American, Wright, and the one Caucasian employee who were found to be in possession of controlled substances both had their employment terminated. Therefore, because the court concludes that Wright has not made out his *prima facie* case of race discrimination under Title VII, Winnebago's Motion for Summary Judgment on all of Wright's claims is granted.

### III. CONCLUSION

For the reasons stated above, defendant Winnebago's Motion for Summary Judgment is **granted**. The court concludes that plaintiff Wright has not generated a genuine issue of material fact on his claims of race discrimination and has failed to make out a *prima facie* case of race discrimination under Title VII and the ICRA.

**IT IS SO ORDERED.**

**DATED** this 5th day of May, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA